-1-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMANUEL RUTH INVESTMENT CORP., individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>SENECA SPECIALTY INSURANCE COMPANY, a/k/a SENECA INSURANCE COMPANY, and XYZ ENTITIES #1-10,<br><br>　　　　Defendants. | Docket No.<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Emanuel Ruth Investment Corp. ("ERIC"), individually and on behalf of all others similarly situated, by and through its counsel, Alan C. Milstein and Michael Dube of Sherman, Silverstein, Kohl, Rose & Podolsky, P.A., by way of Complaint against Defendants Seneca Specialty Insurance Company, a/k/a Seneca Insurance Company ("Seneca") and XYZ Entities #1-10, hereby says, states, and avers as follows:

### THE PARTIES

1. Plaintiff Emanuel Ruth Investment Corp. is a Pennsylvania corporation with a principal place of business at 311 South 13th Street, Philadelphia, PA 19107. It is a citizen of the Commonwealth of Pennsylvania.

2. Defendant Seneca Specialty Insurance Company, a/k/a Seneca Insurance Company is an Arizona corporation with a principal place of business at 160 Water Street, New York, NY 10038. It is a citizen of the States of Arizona and New York.

3. XYZ Entities #1-10 are entities, whose identities are currently unknown or not fully known to the Plaintiff, that bear or may bear responsibility for the incident in suit.

-2-

**PERSONAL JURISDICTION**

4.      This Court has personal jurisdiction over Seneca because it possesses the requisite minimum contacts with the Commonwealth of Pennsylvania, and systematically and continuously transacts business within the Commonwealth of Pennsylvania.

**SUBJECT MATTER JURISDICTION**

5.      This Court has subject matter jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States," because said claims exceed $75,000, exclusive of interest and costs, and are between citizens of different states.

6.      To the extent that there are more than 100 class members (which is only known to Seneca at this time), and those class members' claims exceed $5,000,000 in the aggregate (which is only known to Seneca at this time), this Court has subject matter jurisdiction over the claims of all class members from all states pursuant to the Class Action Fairness Act of 2005 ("CAFA"). See 28 U.S.C. §§ 1332(d), 1453, 1711-1714.

7.      Regardless of whether CAFA applies, this Court has 28 U.S.C. § 1367 supplemental jurisdiction over the claims of all class members, because the Plaintiff's claims exceed $75,000, exclusive of interest and costs, and are between citizens of different states. See Exxon Mobil, Inc. v. Allapattah Services, Inc., 545 U.S. 546 (2005).

**VENUE**

8.      Venue is proper in the United States District Court for the Eastern District of Pennsylvania because a substantial part of the events giving rise to this lawsuit occurred within the territory encompassed by this Court. See 28 U.S.C. § 1391(b)(2).

-3-

## FACTS COMMON TO ALL COUNTS

### I.

9. This is a class action brought on behalf of the Plaintiff and all Seneca policyholders and insureds that, following a property loss, have elected to recover on an actual cash value basis, and have been assessed a "coinsurance penalty" based upon the property's replacement cost.

10. ERIC is the owner of commercial property located at 4600 Lancaster Avenue, Philadelphia, PA 19131 ("Subject Property" or "Property"), as well as other commercial properties in Philadelphia and Pennsylvania ("ERIC Properties").

11. On or around January 25, 2012, Seneca issued Policy No. SSP1501079, an all-risk commercial property policy ("Policy"), to ERIC. A true and correct copy of the Policy is attached to this Complaint as **Exhibit "A."**

12. The ERIC Properties, including the Subject Property, are each separately enumerated on the declarations page of the Policy.

13. The Subject Property's "Limit of Insurance" is listed at $212,180.

14. The Policy provides for replacement cost coverage, but allows ERIC to, at its option, recover on an actual cash value (when abbreviated, "ACV") basis.

15. Most pertinently to this litigation, the Policy includes a coinsurance term providing that, if the insured fails to purchase high enough limits, it must act as a co-insurer in the event of a loss. See Exhibit A, page 46.

16. Typically under a coinsurance provision,

   a. If the replacement value of a property is $1,000,000, the coinsurance requirement is ninety percent, and an insured only purchased $450,000 worth of

insurance for the property (half of $900,000), an insured electing to recover replacement cost following a loss suffers a fifty percent coinsurance penalty.

      b.      If the actual cash value of the same property is $500,000, and an insured purchased the same $450,000 worth of insurance (which is ninety percent of $500,000), an insured electing to recover on an actual cash value basis following a loss suffers no coinsurance penalty.

17.      It is well understood and accepted in the insurance industry that there will be many instances in which an insured will "do better" by recovering on an actual cash value basis than a replacement cost basis, because, where the recovery is on an actual cash value basis, the coinsurance penalty similarly calculated on actual cash value is limited or nonexistent.

**II.**

18.      On August 23, 2012, a motor vehicle crashed into the Property, causing it to sustain substantial damage.

19.      ERIC notified Seneca of the loss in a timely and proper fashion, and the claim was assigned Claim No. 12HHN260 ("Claim").

20.      In its handling of the Claim, Seneca has breached the terms and conditions of the Policy and acted in bad faith.

21.      Seneca determined that the replacement cost value of the Property at the time of the loss was $395,486, ERIC was required to carry limits of $356,261, and ERIC would therefore only be able to recover 59.56% of the damages it sustained.

22.      This would only be correct if ERIC was making a claim for replacement cost value.

23.      ERIC, however, had advised Seneca that it was only making a claim for the actual cash value of the damaged property and, as a result, the required limits (and any coinsurance

-4-

penalty) must be measured using the lower actual cash value of the Property, rather than the irrelevant replacement cost of the Property.

24. Other insurance companies interpret coinsurance provisions in this manner; that is, when a claim is made on actual cash value basis, the required amount of coverage to avoid a coinsurance penalty is similarly calculated on an actual cash value basis.

25. One reason for this, among others, is that an insured pays extra for replacement cost coverage, so presumably it is receiving more coverage not less than if the insured purchased only an actual cash value policy.

26. Moreover, courts have uniformly held that when an insured elects coverage under an actual cash value basis, the replacement coverage provisions are irrelevant.

27. On December 10, 2012, Seneca issued a letter to ERIC's public adjuster improperly rejecting ERIC's Claim ("December 10 Letter"). A true and correct copy of the December 10 Letter is attached to this Complaint as **Exhibit "B."**

28. According to Seneca, "Although the policy permits the insured to submit its claim on an actual cash value basis, that option does not alter the method by which the 'value of the covered property' is determined for purposes of calculating coinsurance." See Exhibit B, page 5.

29. This is simply untrue.

30. Seneca then reiterated that the replacement cost value of the Property at the time of the loss was $395,486, ERIC was required to carry limits of $356,261, and ERIC would therefore only be able to recover 59.56% of the damages it sustained. See Exhibit B, pages 5-6.

31. Seneca then applied the ".5956 collection ratio" to the $30,840 in actual loss calculated by its adjuster, and asked ERIC to submit a sworn proof of loss in the amount of $23,880.30. See Exhibit B, page 6.

32. Seneca's interpretation of its Policy is arbitrary, capricious, unreasonable, contrary to the plain language of the Policy and the reasonable expectations of its insured, and in bad faith; if such an interpretation were to stand, Seneca would in effect have been charging a higher premium to its insureds for less coverage.

33. On information and belief, Seneca has interpreted its policies in this manner with regard to hundreds, if not thousands, of insureds throughout the country who elected to make a claim on an ACV basis.

## CLASS ACTION ALLEGATIONS

34. This action is being brought as a class action under Federal Rules of Civil Procedure 23(a), 23(b)(l), 23(b)(2), and 23(b)(3), on behalf of a class ("Class") consisting of the following:

> **All Seneca policyholders and insureds that, following a property loss, have elected to recover on an actual cash value basis, and have been assessed a coinsurance penalty based upon the replacement cost of the property.**

35. The Class is so numerous that joinder of all members is impracticable. See Federal Rule of Civil Procedure 23(a)(1).

36. The exact size of the Class and the members thereof are ascertainable through Seneca's business records.

37. Common questions of law and fact exist as to all members of the Class and predominate over any questions effecting solely individual members of the Class. See Federal Rule of Civil Procedure 23(a)(2).

38. The claims of the Plaintiff and the class arise from the same wrongful conduct, and are based upon the same legal theories.

39. The Plaintiff's claims are typical of the claims of the other members of the Class, as the Plaintiff and all other members of the Class were damaged in the same way. <u>See</u> Federal Rule of Civil Procedure 23(a)(3).

40. The Plaintiff will fairly and adequately represent the interests of the Class, and has retained counsel competent and experienced in class action litigation. <u>See</u> Federal Rule of Civil Procedure 23(a)(4).

41. The Plaintiff and its counsel are committed to vigorously pursuing this matter, and have the financial resources to do so.

42. The Plaintiff has no interests that are contrary to or in conflict with those of the Class.

43. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. <u>See</u> Federal Rule of Civil Procedure 23(b)(3).

44. Since the damage suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members individually to seek redress for the unlawful conduct alleged.

45. Moreover, as set forth above, common questions of law and fact exist as to all members of the Class and predominate over any questions that solely effect individual members of the Class. <u>See id.</u> These common questions include the question of whether Seneca's method of calculating a coinsurance penalty is wrongful.

46. The Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

**<u>COUNT ONE – BREACH OF CONTRACT</u>**

47. The Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

48. The Policy is a valid and enforceable contract between ERIC, on the one hand, and Seneca, on the other hand.

49. The members of the Class also possess (and/or possessed) valid and enforceable contracts with Seneca.

50. ERIC has complied with all of the applicable terms and conditions of the Policy.

51. The members of the Class also complied with all of the applicable terms and conditions of their contracts with Seneca.

52. Seneca has breached the Policy (and the policies it issued to members of the Class) by, among other things, using the irrelevant replacement cost of a property, rather than the applicable actual cash value, to calculate whether enough insurance had been purchased.

53. The aforesaid breach has directly and proximately caused ERIC and the members of the Class to sustain damages.

## COUNT TWO – INSURANCE BAD FAITH

54. The Plaintiff repeats each of the foregoing allegations as if fully set forth herein.

55. Seneca has no actual basis for declining full coverage to ERIC and the members of the Class.

56. Seneca has acted in bad faith by knowingly taking actions that lacked a reasonable basis, and frivolously and unfoundedly refusing to pay policy proceeds due and owing to policyholders, including ERIC and the members of the Class.

57. Seneca's actions run contrary to 42 Pa.C.S.A. § 8371 and other applicable statutes and common law governing first-party bad faith.

58. Interest, punitive damages, and attorney's fees should be awarded in favor of the Plaintiff and the Class, and against Seneca, in order to deter it from acting in this manner now and in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Emanuel Ruth Investment Corp., individually and on behalf of the Class, respectfully demands the following relief:

a. An order certifying the Class, appointing the Plaintiff as the representative of the Class, and appointing counsel for the Plaintiff as lead counsel for the Class;

b. A judgment for and award of compensatory damages to the Plaintiff and the Class;

c. A judgment for and award of punitive damages to the Plaintiff and the Class;

d. A judgment for and award of attorney's fees, court costs, and litigation expenses to the Plaintiff and the Class; and

e. Such other and further relief as this Honorable Court deems proper.

## JURY TRIAL DEMAND

The Plaintiff and the Class demand a jury trial as to all counts so triable.

Dated: <u>January 8, 2013</u>          Respectfully submitted,

                                                    SHERMAN, SILVERSTEIN, KOHL,
                                                        ROSE & PODOLSKY, P.A.

                              By:   /s/ Alan C. Milstein
                                     Alan C. Milstein
                                     Michael Dube
                                     308 Harper Drive, Suite 200
                                     Moorestown, NJ 08057
                                     Telephone: 856-662-0700
                                     Facsimile: 856-488-4744

                                   *Attorneys for the Plaintiff and the Class*

696206.1